**Marco L. SCHAEUBLE, Plaintiff,**

v.

**Janet RENO, Attorney General; Doris Meissner, Commissioner of the Immigration & Naturalization Service; Andrea Quarantillo, District Director; John Thompson, Port Director, United States Customs Service, Federal Bureau of Investigation, and United States of America, Defendants.**

**No. 99 CIV. 5013(WGB).**

United States District Court, D. New Jersey.

March 6, 2000.

Thomas E. Moseley, Newark, NJ, for Plaintiff.

Robert J. Cleary, United States Attorney, Colette R. Buchanan, Assistant U.S. Attorney, Newark, NJ, for Defendants.

## OPINION

BASSLER, District Judge.

Although Plaintiff's fifteen year old conviction has been vacated, because the record of that conviction could have dire immigration consequences, Plaintiff is battling with the INS and the FBI simply to have their records amended to reflect the vacation of that conviction. In doing so, Plaintiff has filed an Order to Show Cause why an order should not be issued amending and correcting Defendants' records of Plaintiff's conviction. Defendants are ordered to amend their records to reflect that Plaintiff's 1985 conviction has been vacated, but Defendants are not required to expunge their records of Plaintiff's conviction.

Defendants move to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Fed. R.Civ.P. 12(b)(6). Defendants' motion is **denied**, but the claims against individual Defendants and claims under the Administrative Procedure Act are **dismissed**.

This Court has subject matter jurisdiction based on 5 U.S.C. § 552a(g)(1), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

## I. BACKGROUND

Plaintiff Marco Schaeuble is a West German citizen who has been a lawful permanent resident of the United States for over thirty years. (Verified Compl. ¶ 2.) About fifteen years ago, on March 27, 1985, while a senior at the University of Wisconsin, Plaintiff was convicted in the Circuit Court of Wisconsin of delivery of a controlled substance in violation of Wisconsin Penal Code § 101.41(1)(b). (*Id.* at ¶ 12, Exh. E.) Plaintiff entered a no contest plea for selling 1/8th of an ounce of cocaine to an undercover police officer for $300. (*Ibid.*) On February 11, 1985, he was sentenced to two years probation with a custodial sentence of three months stayed. (*Ibid.*) The information regarding his arrest and conviction was forwarded to the Federal Bureau of Investigation ("FBI"), Criminal Justice Identification Services Division ("CJIS"), and entered into their computerized database.

Since then, Plaintiff appears to have lived as a productive member of society, taking care of his seriously ill father and preparing for his upcoming marriage. (*Id.* at ¶ 9.) He currently resides in Jersey City, New Jersey and is employed as the Regional Sales Manager for the Schiavi Division of the Bobst Group in Roseland, New Jersey. As part of his duties as sales manager, Plaintiff makes frequent business trips abroad. (*Id.* at ¶¶ 2, 11.)

On February 22, 1999, shortly after Plaintiff returned from a trip abroad, the Immigration and Naturalization Service ("INS") placed Plaintiff in removal proceedings and detained him pursuant to the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009 (1996) (September 30, 1996). (*Id.* at ¶ 12.) While in detention, Plaintiff filed a petition for writ of habeas corpus, *Schaeuble v. Rend,* 99–868(KSH) (D.N.J.). (*Id.* at ¶ 13.) Subsequently, Plaintiff's counsel successfully applied to the Court in Wisconsin and had Plaintiff's case reopened. By Order dated March 3, 1999, Plaintiff's conviction was vacated, and the indictment was dismissed on the grounds that Plaintiff had not been advised of the immigration consequences of his plea. (*Ibid.*) Subsequently, the habeas petition was dismissed by stipulation and order. The INS released Plaintiff

from detention and admitted him into the United States. (*Id.* at ¶ 14.)

Since Plaintiff's release from INS custody, Plaintiff has attempted to have the INS correct the agency's records about him to reflect that his 1985 conviction has been reopened and vacated. (*Id.* at ¶ 15.) Beginning on May 3, 1999, Plaintiff sent letters to the INS and the United States Customs Service ("Customs Service") requesting amendment of his records. (*Id.* at ¶¶ 15–17.) The Customs Service notified Plaintiff in writing that they were forwarding the request to the INS. (*Id.* at ¶ 15, Exh. I.) Following some correspondence between Plaintiff's counsel and the INS, in which the INS seemed to misconstrue Plaintiff's request as one for access to records, the INS referred the request for amendment to the FBI. (*Id.* at ¶ 16.) By letter dated September 24, 1999, the FBI indicated that the request had been forwarded to its component, CJIS. (*Ibid.*)

Plaintiff alleges that after he attempted to negotiate with personnel from the Newark District Office to correct his records and resolve this matter, on October 18, 1999, the INS Port Director John Thompson, confirmed that the INS would not amend Plaintiff's records and that Plaintiff would be subject to removal if he departed the country on business and sought to return.

Consequently, Plaintiff filed a complaint with this Court on October 26, 1999 pursuant to the Privacy Act, 5 U.S.C. § 552a, the Immigration & Nationality Act of 1952, as amended ("INA"), 8 U.S.C. §§ 1101 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.* He seeks a declaratory judgment that his 1985 conviction has been vacated, an order directing the INS and the FBI to correct their records on Plaintiff and expunge any reference to the 1985 conviction, a temporary injunction barring the INS from initiating any action against Plaintiff based on the 1985 conviction pending final judgment, and costs and fees.

Because Plaintiff had to travel to Modena, Italy on November 15, 1999 for a business trip, on October 29, 1999, Plaintiff filed this Order to Show Cause why an Order should not issue amending and correcting the records on Plaintiff as had been requested. At the hearing, Defendants consented to Plaintiff not being subject to removal when he returned from his trip to Modena, Italy until this matter was resolved.

Defendants seek dismissal of this action contending that this Court lacks subject matter jurisdiction and that Plaintiff has failed to state a claim upon which relief can be granted.

## II. *DISCUSSION*

### A. *Jurisdiction over the United States*

■ Defendants argue that sovereign immunity bars Plaintiff's suit against the United States. Under the doctrine of sovereign immunity, suits cannot be brought against the United States unless it has expressly consented to be sued. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *United States v. Shaw*, 309 U.S. 495, 500–501, 60 S.Ct. 659, 84 L.Ed. 888 (1940). Furthermore, the terms of the United States' consent to be sued define a court's jurisdiction. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *Sherwood, supra; Shaw, supra.* Consent by the United States to be sued must be construed strictly in favor of the sovereign. *United States v. Nordic Village*, 503 U.S. 30, 112 S.Ct. 1011, 1014–15, 117 L.Ed.2d 181 (1992).

■ Sovereign immunity does not apply, however, to suits seeking solely declaratory and injunctive relief. The APA, 5 U.S.C. § 702, provides in part:

An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not

be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States.

Although Plaintiff seeks primarily only declaratory and injunctive relief, he also seeks costs and attorneys' fees.

■ As acknowledged by Defendants, however, under the Privacy Act, an individual is authorized to institute a civil cause of action against a federal agency for failure to amend a record, and therefore provides a limited waiver of sovereign immunity. 5 U.S.C. § 552a(g)(1)(A).[1] Moreover, the Privacy Act expressly permits an individual to recover attorneys' fees and other litigation costs against the United States when the plaintiff substantially prevails. 5 U.S.C. § 552a(g)(2)(B). Therefore, Plaintiff's claims against the United States are not barred by the doctrine of sovereign immunity.

1. 5 U.S.C. § 552a(g)(1) provides in pertinent part:

 (g)(1) Civil remedies.—Whenever any agency

 (A) makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection; ... or

 (D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

 (2)(A) In any suit brought under the provisions of subsection (g)(1)(A) of this section, the court may order the agency to amend the individual's record in accordance with his request or in such other way as the court may direct. In such a case the court shall determine the matter de novo.

2. 5 U.S.C. § 552a(d) provides in pertinent part:

 Access to records.—Each agency that maintains a system of records shall -

 . . .

## B. *Exhaustion of Remedies Under Privacy Act*

Defendants argue that despite the limited waiver of sovereign immunity, this Court lacks subject matter jurisdiction because Plaintiff failed to exhaust administrative remedies prior to filing suit under the Privacy Act.

Although the Privacy Act does not expressly require a plaintiff to exhaust administrative remedies prior to filing a civil suit, "that requirement has been imposed by the courts as a general principle of administrative law." *Hammie v. Social Security Administration,* 765 F.Supp. 1224, 1225 (E.D.Pa.1991); *Anderson v. United States Postal Serv.,* 7 F.Supp.2d 583, 586 n. 3 (E.D.Pa.1998), *aff'd* 187 F.3d 625 (3d Cir.1999); *see also Anjelino v. The New York Times Co.,* 200 F.3d 73, 87 (3d Cir.1999) ("it is a 'basic tenet' of administrative law that a plaintiff should timely exhaust all administrative remedies before seeking judicial relief").

The Third Circuit, recognizing that the Privacy Act sets forth detailed procedures[2] by which an agency must permit an

 (2) permit the individual to request amendment of a record pertaining to him and–

 (A) not later than 10 days (excluding Saturdays, Sundays, and legal public holidays); after the date of receipt of such request, acknowledge in writing such receipt; and

 (B) promptly, either–

 (i) make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete; or

 (ii) inform the individual of its refusal to amend the record in accordance with his request, the reason for the refusal, the procedures established by the agency for the individual to request a review of that refusal by the head of the agency or an officer designated by the head of the agency, and the name and business address of that official;

 (3) permit the individual who disagrees with the refusal of the agency to amend his record to request a review of such refusal, and not later than 30 days (excluding Saturdays, Sundays, and legal public holidays) from the date on which the individual requests such review, complete such review and make a final determination unless, for good cause shown, the head of the agency extends such 30–day period; and if, after his review, the reviewing official also re-

individual to request amendment of his records, concluded that the plaintiff seeking to amend records must exhaust administrative remedies before filing suit.[3] *See Quinn v. Stone,* 978 F.2d 126, 137 (3d Cir.1992);[4] *see also Diederich v. Dep't of the Army,* 878 F.2d 646, 647 (2nd Cir.1989) (noting that suit for injunctive relief is authorized under Privacy Act where agency fails to abide by expedited review procedures mandated by Act, but that suit for damages does not require exhaustion of administrative remedies).

■ Because, however, exhaustion of administrative remedies under the Privacy Act is not statutorily mandated, the exhaustion requirement is not a jurisdictional prerequisite. *See Taylor v. United States Treasury Dep't,* 127 F.3d 470, 476 (5th Cir.1997) ("[w]henever the Congress statutorily mandates that a claimant exhaust administrative remedies, the exhaustion requirement is jurisdictional because it is tantamount to a legislative investiture of exclusive original jurisdiction in the agency," but "in the absence of a statutory requirement of exhaustion of administrative remedies, the jurisprudential doctrine[5] of exhaustion controls"). As explained by the Third Circuit, the "[f]ailure to exhaust is 'in the nature of statutes of limitation' and 'do[es] not affect the District Court's subject matter jurisdiction.'" *Anjelino,* 200 F.3d at 87 (citing *Hornsby v. United States Postal Serv.,* 787 F.2d 87, 89 (3d Cir.1986)). Instead of a jurisdictional prerequisite, the purpose of the exhaustion requirement is "practical" and is "meant to 'provide courts with the benefit of an agency's expertise, and serve judicial economy by having the administrative agency compile the factual record.'" *Anjelino v. The New York Times Co.,* 200 F.3d 73, 87 (3d Cir.1999) (quoting *Robinson v. Dalton,* 107 F.3d 1018, 1020 (3d Cir.1997)); *see also Taylor,* 127 F.3d at 476–77. Therefore, even if Plaintiff has failed to exhaust administrative remedies, the Court does not lack subject matter jurisdiction over Plaintiff's claim.

Moreover, where exhaustion has not been specifically mandated by Congress, exhaustion is governed by sound judicial discretion. *See McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992); *see also Patsy v. Board of Regents of Florida,* 457 U.S. 496, 518, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) (White, J., concurring in part ) ("[E]xhaustion is 'a rule of judicial administration,' . . . and unless Congress directs otherwise, rightfully subject to crafting by judges"). Consequently, "a court may decline 'to require exhaustion in some circumstances even where administrative and judicial interests would counsel otherwise.'" *Rice v. United States,* 68 F.3d 702, 708 (3d Cir. 1995) (citations omitted).

The Supreme Court noted at least three circumstances "in which the interests of the individual weigh heavily against requiring administrative exhaustion." *Id.* at 708.

> First, a court is less likely to apply exhaustion when it may cause "undue prejudice to subsequent assertion of a court action." *McCarthy,* 503 U.S. at

---

> fuses to amend the record in accordance with the request, permit the individual to file with the agency a concise statement setting forth the reasons for his disagreement with the refusal of the agency, and notify the individual of the provisions for judicial review of the reviewing official's determination under subsection (g)(1)(A) of this section; . . .

3. In contrast, the Circuit noted that exhaustion is not required in a suit for damages under § 552a(g)(4). *Quinn,* 978 F.2d at 138, n. 22.

4. The Circuit affirmed the district court's decision to grant summary judgment to the defendants because the plaintiffs, not having made *any* request to the Army to expunge or amend their records prior to filing suit, failed to exhaust administrative remedies.

5. "The jurisprudential exhaustion doctrine is a 'long settled rule of judicial administration [which mandates] that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Taylor,* 127 F.3d at 476.

146–47, 112 S.Ct. at 1087. One way in which this "undue prejudice" may occur is by "an unreasonable on indefinite timeframe for administrative action." *Id.* at 147, 112 S.Ct. at 1087 (citations omitted). Second, a court may excuse exhaustion when there is " 'some doubt as to whether the agency was empowered to grant effective relief.' " *Id.* (quoting *Gibson v. Berryhill,* 411 U.S. 564, 575 n. 14, 93 S.Ct. 1689, 1696 n. 14, 36 L.Ed.2d 488 (1973)). Third, exhaustion may not be required when the agency "is shown to be biased or has otherwise predetermined the issue before it." *Id.* at 148, 112 S.Ct. at 1088 (citing *Gibson,* 411 U.S. at 575 n. 14, 93 S.Ct. at 1696 n. 14).

*Ibid.*

■ In this case, not only has Plaintiff adequately exhausted his administrative remedies by requesting the amendment as set forth in § 552a(d), the circumstances of this case also weigh heavily against requiring any further administrative exhaustion. Plaintiff's first letter to the INS [6] requesting amendment of his records was dated May 3, 1999.[7] While it may be true that the INS initially misconstrued Plaintiff's request as one for access to records, by letter dated August 6, 1999, Plaintiff's counsel identified the misunderstanding and reiterated that Plaintiff's request was for an amendment of his records rather than access to them. Under the Privacy Act, the INS was required to acknowledge Plaintiff's request to amend within 10 business days of receipt and then "promptly" make the requested correction or inform Plaintiff of its refusal to make such a correction, provide him with the reason for the refusal, and advise him of any agency procedures for requesting review of the

refusal. 5 U.S.C. § 552a(d)(2): *see, e.g., Diederich,* 878 F.2d at 648 ("The Privacy Act demands that *all* federal agencies act swiftly in determining requests to amend records") (emphasis added).

The INS did not comply with any of the requirements set forth in § 552a(d)(2). In fact, as stated by Defendants, Plaintiff's request, to date, remains pending with the INS.

In contradiction to Defendants' statement that Plaintiff's request is still pending with the INS, Defendants also suggest that the INS' referral of the matter to the FBI constituted the "prompt" correction or refusal to amend the record mandated by the Privacy Act because only 32 days elapsed between October 26, 1999 when Plaintiff filed his complaint, and September 24, 1999 when the INS finally referred the matter to the FBI. The 32 day lapse is, however, irrelevant because the INS neither granted nor denied Plaintiff's request on September 24, 1999. Rather, even giving the INS the benefit of excluding the time during which it apparently misconstrued Plaintiff's request, Plaintiff's request has now been pending for about six months, since August of 1999 when Plaintiff's counsel sent the INS a letter clarifying the nature of the request. A six month delay is not a "prompt" response.

Moreover, not only has the INS not indicated that it will make a final determination on Plaintiff's application by any certain date, the Privacy Act does not bind the INS to any definite timeframe for administrative action, which weighs in favor of waiving the exhaustion requirement. *See Rice,* 68 F.3d at 709 (waiving exhaustion requirement because indefinite delay

---

**6.** Plaintiff's request was submitted to the CJIS on September 24, 1999. The CJIS, however, has also not yet responded to Plaintiff's request. Therefore, the same analysis and conclusion that apply to Plaintiff's application to the INS, *see infra,* also applies to Plaintiff's request to the CJIS.

**7.** Defendants point out that Plaintiff's request did not conform with the INS regulations

governing requests for correction of records, 8 CFR § 103.28. If that is a sufficient basis for the INS to have denied Plaintiff's request, the INS was required under § 552a(d)(2)(B) to have advised Plaintiff of the deficiency so that Plaintiff could have had the opportunity to amend his request. If, on the other hand, it was not fatal to Plaintiff's request, then Defendants' point has no relevance here.

imposed before hearing plaintiff's application is unreasonable); *Cf. Coit Independence Joint Venture v. Federal Sav. and Loan Ins. Corp.,* 489 U.S. 561, 579, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989)("Because the Bank Board's regulations do not place a reasonable time limit on FSLIC's consideration of claims, Coit cannot be required to exhaust those procedures.")

Because Defendants have failed to comply with the procedures set forth in the Privacy Act, requiring Plaintiff to make any further efforts at obtaining administrative resolution would be futile. *See Honig v. Doe,* 484 U.S. 305, 327, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (noting that parties "may bypass the administrative process where exhaustion would be futile or inadequate"); *see also Liguori v. Alexander,* 495 F.Supp. 641 (S.D.N.Y.1980) (declining to dismiss for failure to exhaust administrative remedies and holding that plaintiff has exhausted all administrative procedures necessary where it would be "wasteful and probably futile" to require plaintiff to start the exhaustion process anew). In *Liguori,* the plaintiff, a Cook General Foreman at the United States Military Academy, instituted a suit challenging certain personnel actions that adversely affected him. One of the plaintiff's claims was brought under the Privacy Act to amend and correct his personnel records. Prior to filing suit, the plaintiff had orally requested the custodian of his personnel records to amend his records but was refused. The defendant then remained silent and failed to inform the plaintiff of the procedures to follow for agency review under § 552a(d)(2). In

holding that the complaint should not be dismissed for failure to exhaust administrative remedies, the court based its decision, in part, on the following: (1) the plaintiff had initiated a request under the Privacy Act, but the agency failed to fulfill its statutory duty to respond; and (2) it was not a "case where plaintiff, by failing to pursue any administrative procedures, deprived the agency of all opportunity to amend the records prior to court review." *Id.* at 647.

Because Plaintiff has sought to obtain relief through administrative channels, but has been unable to do so because of Defendants' failure to comply with the procedures set forth in the Privacy Act as well as other applicable regulations,[8] Plaintiff has adequately exhausted administrative remedies and requiring any further attempts to exhaust would be futile.

### C. *FBI Regulations Governing Amendment of Records*

Additionally, Defendants contend that Plaintiff has failed to exhaust administrative remedies as required under the Privacy Act because Plaintiff did not follow the procedure required for requesting an amendment of his criminal history or "identification" records. Specifically, Defendants state that pursuant to 28 C.F.R. 16:34,[9] the FBI cannot make any change to the identification record without official communication from the agency that contributed the original information regarding the conviction to the FBI. Relying on *Johnson v. Sessions,* 1992 WL 212408 (D.D.C. Aug.19, 1992), Defendants argue that it would be inappropriate for this

---

8. *See* discussion *infra.*

9. 28 C.F.R. § 16.34 states:

If, after reviewing his/her identification record, the subject thereof believes that it is incorrect or incomplete in any respect and wishes changes, corrections or updating of the alleged deficiency, he/she should make application directly to the agency which contributed the questioned information. The subject of a record may also direct his/her challenge as to the accuracy or completeness of any entry on his/her record to

the FBI, Criminal Justice Information Services (CJIS) Division, ATTN: SCU, Mod. D-2, 1000 Custer Hollow Road, Clarksburg, WV 26306. The FBI will then forward the challenge to the agency which submitted the data requesting that agency to verify or correct the challenged entry. Upon the receipt of an official communication directly from the agency which contributed the original information, the FBI CJIS Division will make any changes necessary in accordance with the information supplied by that agency.

Court to order the FBI to violate its procedure and amend the record when Plaintiff has a mechanism to obtain the relief he seeks by requesting the Wisconsin authorities to submit the updated information to CJIS.

In *Johnson,* 1992 WL 212408, the plaintiff sought to have records of four arrests expunged. The request was moot as to three of the arrests because they had already been expunged. As for the fourth arrest, the defendant knew of no state court order expunging that arrest. Therefore, the court concluded that absent any clear constitutional violation, or unusual or extraordinary circumstance warranting invocation of the court's equitable authority to expunge the arrest record, it did not have jurisdiction to order the FBI to violate its own regulations, which required the agency to wait for authorization from the appropriate judicial authority before expunging an arrest record. *Johnson,* 1992 WL 212408, at *2.

■ Here, to the extent that Plaintiff is requesting that Defendants *expunge* his criminal record, Defendants are correct that the FBI has received no authorization from the Wisconsin court that the conviction should be expunged. Therefore, the Court will not order Defendants to expunge the 1985 conviction from agency records. It is, however, uncontested that the Wisconsin court has already *vacated* Plaintiff's conviction and that Defendants were provided with a copy of that order;[10] accordingly, it is proper for Plaintiff to seek to have his identification records reflect that change.

Pursuant to 28 C.F.R. § 16.34, upon receipt of Plaintiff's request, the onus is clearly and unequivocally on the FBI to then "forward the challenge to the agency which submitted the data requesting that agency to verify or correct the challenged entry." Here, despite the FBI's clearly designated responsibility, the FBI did not forward the challenge to the Wisconsin court requesting that it verify or correct the challenged entry. Although it was the FBI that failed to comply with the regulation, Defendants make the unreasonable assertion that "[t]he proper and perhaps most expeditious procedure for plaintiff to obtain an amendment of his identification record is to request the authorities in Wisconsin to send the information regarding the March 3, 1999 order to the CJIS." Memorandum in Support of Defs.' Motion to Dismiss the Complaint, at 12. Defendants would effectively ignore the very regulation it purportedly seeks to enforce by shifting onto Plaintiff the responsibility if had to forward the challenge to the Wisconsin court.

If the FBI had properly forwarded the challenge to the Wisconsin court, it would have prompted the necessary "official communication" directly from that court, which is now sought by Defendants. Therefore, because Defendants already have a copy of the order vacating Plaintiff's conviction and because it is the FBI's duty to verify the data with the Wisconsin state court, Defendants cannot now argue that requiring the FBI to amend its identification records of Plaintiff's conviction would be directing the FBI to violate its procedures regarding the amendment of records.

### D. *Privacy Claims Against Janet Reno, Andrea Quarantillo and John Thompson*

■ Defendants seeks dismissal of this action against Janet Reno, Andrea Quarantillo, and John Thompson. The Privacy Act provision for civil remedies applies only against federal agencies, not individuals.[11] *Bruce v. United States,* 621 F.2d 914, 916 n. 2 (8th Cir.1980); *see also Unt v. Aerospace Corp.,* 765 F.2d 1440, 1447 (9th

---

**10.** The letter dated August 6, 1999 from Plaintiff's counsel indicates that a copy of the state court's order vacating the conviction was provided to the INS. *See* Ex. M attached to Pl.'s Order to Show Cause. Additionally, counsel for Defendants conceded at oral argument that the INS files pertaining to Plaintiff contain a copy of that order.

**11.** Individuals are only subject to criminal penalties. 5 U.S.C. § 552a(i)(1); *Bruce,* 621 F.2d at 916 n. 2.

Cir.1985). Therefore, the individual Defendants[12] are not proper defendants and are dismissed from Plaintiff's complaint.

### E. Jurisdiction to Review of Attorney General's Decision to Commence Removal Proceedings

Next, Defendants argue that Plaintiff's "true objective" is to have the Court prohibit the Attorney General from commencing removal proceedings against Plaintiff and that that decision is involves "pure prosecutorial discretion," which is barred from judicial review pursuant to § 242(g) of the Immigration and Nationality Act ("INA"),[13] *Reno v. American–Arat Anti–Discrimination Committee,* ("*AADC*") 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), and *DeSousa v. Reno,* 190 F.3d 175 (3d Cir.1999).

Defendants err in attempting to re-characterize Plaintiff's complaint as essentially a habeas petition. Plaintiff is not seeking review of any decision made by the Attorney General; rather, he is simply requesting that the agency's record of his conviction reflect the vacation of that conviction. *See* discussion *infra,* IIF. Furthermore, assuming for the sake of argument that Plaintiff is seeking habeas relief, the Court is not deprived of jurisdiction under § 242(g), *AADC,* and *DeSousa.*

In *AADC,* the plaintiffs claimed that the INS had selectively targeted them for deportation because of what they asserted were protected First Amendment activities involving the Popular Front for the Liberation of Palestine, a politically unpopular group. The Court held that INA § 242(c) deprives federal courts of jurisdiction to review "three discrete actions" that may be taken by the Attorney General: decisions to "commence proceedings, adjudicate cases, or execute removal orders." *Id.* 119 S.Ct. at 943. Because the plaintiffs' "challenge to the Attorney General's decision to 'commence proceedings' against them falls squarely within § [242(g) ]," the Court concluded that the federal courts had no jurisdiction over the plaintiffs' selective prosecution claim. *Id.* at 945.

The Third Circuit has interpreted *AADC* narrowly to mean that § 242(g) applies *only* to suits challenging the Attorney General's "selective enforcement of the immigration laws." *DeSousa,* 190 F.3d at 182.

 Even if Plaintiff's "true objective" were to challenge the Attorney General's decision to "commence proceedings," Plaintiff is not alleging "selective enforcement of the immigration laws." Therefore, *AADC, DeSousa,* and their interpretations of INA § 242(g) are inapplicable.

### F. Statutory Interpretation

Next, Defendants argue that even if the Court has jurisdiction over this matter, Plaintiff's contention that the Attorney General cannot use his vacated 1985 drug conviction as a ground for his removal is a question of statutory interpretation that should be addressed first by the Board of Immigration Appeals ("BIA"). In *In re Mauro Roldan–Santoyo,* 1999 WL 126433 (BIA 1999), the BIA determined that despite any state actions expunging, vacating, dismissing, or canceling convictions or criminal dispositions, an alien has still been "convicted" under the statutory definition of that term set forth in INA § 101(a)(48).[14] That decision, however,

---

**12.** Counsel for Defendants did not seek the dismissal of Defendant Doris Meissner from this action. Because, however, the Court may note the inadequacy of a complaint on its own initiative, *see* Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 1357, the Court will dismiss all claims against Defendant Meissner for the same reasons that the claims against the other individual defendants are being dismissed.

**13.** INA § 242(g), codified at 8 U.S.C. § 1252(g), states: "[e]xcept as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

**14.** INA § 101(a)(48), codified at 8 U.S.C.

was expressly limited to situations "where an alien has been the beneficiary of a state rehabilitative statute which purports to erase the record of guilt." *Id.* at 15. The BIA recognized that it was not addressing the circumstance where a conviction is vacated due to a violation of statutory or constitutional right. *Ibid.* Because that issue has not yet been addressed and involves a question of statutory interpretation and policy, Defendants argue that the BIA, rather than this Court, should be the first to make that determination.

██ Plaintiff's complaint, however, does not raise the statutory interpretation and policy issue of whether a conviction that is vacated due to a violation of statutory or constitutional right constitutes a "conviction" for immigration purposes. Rather, Plaintiff seeks simply to have the Court issue a declaratory judgment that his 1985 conviction has been vacated, to have the agency records reflect that his conviction has been vacated and to have Defendants *temporarily* enjoined from taking any action against him based on the vacated 1985 conviction pending a final judgment. Whether an amendment to the agency records of Plaintiff's 1985 conviction impacts whether he has been "convicted" as defined in § 101(a)(48) has not been determined by the INS or the BIA and consequently, Plaintiff cannot challenge a decision that has not yet been rendered on an issue that has not yet been raised. As argued by Plaintiff, because his conviction has been vacated, there is simply no sound basis for refusing to amend the agency records to reflect that change.

### G. *Declaratory Judgment Act and APA*

In light of the Court's decision that it has subject matter jurisdiction pursuant to the Privacy Act, there is no merit in Defendants' claims that Plaintiff's complaint must be dismissed because the Declaratory Judgment Act, 28 U.S.C. § 2201, provides no basis for the Court to exercise jurisdiction.

Defendants, however, rely on *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) to argue that it is within the Court's discretion whether to exercise its authority under the Declaratory Judgment Act even in those cases where subject matter jurisdiction exists. Assuming that the Court does have discretion, because Plaintiff, in good faith, tried to exhaust his administrative remedies, and it was Defendants' own failure to comport with the Privacy Act and its regulations that impeded Plaintiff's efforts to obtain administrative relief or exhaust his administrative remedies, the Court declines to withhold exercising its authority under the Declaratory Judgment Act.

Finally, Defendants argue that the Administrative Procedure Act does not apply to this case because the Privacy Act governs requests for amendment of records. The APA provides for review of agency action "made reviewable by statute and by final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704; *see Massachusetts v. Bowen*, 487 U.S. 879, 903, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) ("although the primary thrust of § 704 was to codify the exhaustion requirement, the provision as enacted also makes it clear that Congress did not

---

§ 1101(a)(48), provides:

 (A) The term 'conviction' means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
 (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

 (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.
 (B) Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part.

intend the general grant of review in the APA to duplicate existing procedures for review of agency action" and " 'does not provide additional judicial remedies in situations where Congress has provided special and adequate review procedures.'" [citation omitted]).

■ Here, because the Privacy Act sets forth specific procedures for seeking the amendment of records and because Plaintiff's APA claim is identical to his Privacy Act claim, the APA claim is dismissed. *See Mittleman v. United States Treasury,* 773 F.Supp. 442, 449 (D.D.C. 1991) (dismissing APA claim because it was simply a restatement of Privacy Act claim).

## III. *CONCLUSION*

For the reasons noted above, an Order will be issued requiring Defendants to amend their records to reflect that Plaintiff's 1985 conviction has been vacated, but Defendants are not required to expunge their records on Plaintiff.

Defendants' motion to dismiss is **denied**, but the individual Defendants and claims under the Administrative Procedure Act are **dismissed**.

An appropriate Order follows.

### ORDER

This matter having come before the Court on the application of Plaintiff for an Order to Show Cause why an order should not be issues amending and correcting Defendants' records on Plaintiff and on the motion of Defendants to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6); and

The Court having considered the submissions of counsel; and

The Court having heard oral argument on March 6, 2000; and

For the reasons set forth in the Court's Memorandum Opinion issued this day; and

For good cause shown;

It is on this 6th day of March 2000 hereby ORDERED that the relief sought in Plaintiff's Order to Show Cause is **granted in part and denied in part;** and

IT IS FURTHER ORDERED that Defendants amend their records to reflect that Plaintiff's 1985 conviction has been vacated, but Defendants are not required to expunge their records on Plaintiff; and

IT IS FURTHER ORDERED that Defendants' motion to dismiss is **granted in part and denied in part;** and

IT IS FURTHER ORDERED that the individual Defendants and claims under the Administrative Procedure Act are **dismissed;** and

IT IS FURTHER ORDERED that the Clerk of the Court shall remove this case from the Court's active docket.