Corine CHEVES, Vincent Cheves, and Estate of Robert Cheves, Jr., Plaintiffs,

v.

DEPARTMENT OF VETERANS AFFAIRS, Unnamed Supervisors and Employees of the Department of Veterans Affairs, Defendants.

No. 6:01–CV–196–ORL–31JG.

United States District Court, M.D. Florida, Orlando Division.

Aug. 16, 2002.

---

Corine Cheves, Apopka, FL, pro se.

Vincent Cheves, Apopka, FL, pro se.

Ralph E. Hopkins, U.S. Attorney's Office, Middle District of Florida, Orlando, FL, for Defendants.

### ORDER

PRESNELL, District Judge.

On July 26, 2002, Magistrate Judge Glazebrook issued a Report and Recommendation (Doc. 47), recommending that Defendant's Motion to Dismiss (Doc. 12) be granted. Plaintiffs did not file a timely objection to the Report. Instead, they filed a Motion for Enlargement of Time, which the Magistrate Judge denied. See endorsed Order dated August 15, 2002 (Doc. 49). Accordingly, it is

**ORDERED** that:

1. for the reasons set forth in the Report and Recommendation, Defendant's Motion to Dismiss is GRANTED, and Plaintiffs' Complaint is DISMISSED;

2. Plaintiffs may file an amended complaint, consistent with the Report and Recommendation on or before August 30, 2002.

### REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

## TO THE UNITED STATES DISTRICT COURT

This cause came on for consideration at a hearing on April 24, 2002 on the following motion:

**MOTION: DEFENDANTS' MOTION TO DISMISS (Doc. No. 12)**

**FILED: MARCH 18, 2002**

**THEREON it is RECOMMENDED that the motion be GRANTED.**

On February 13, 2001, Veteran Robert Cheves's surviving spouse and children, and the Estate of Robert Cheves, brought this action against the Department of Veterans Affairs ("VA"), and unnamed VA supervisors and employees. Plaintiffs, who are proceeding *pro se*, claim that the VA failed to provide Cheves with adequate medical care in 1966; that the VA failed to notify Cheves and the plaintiffs of their right to appeal the VA's determinations relating to disability ratings and benefits; that certain actions and procedures of the VA deprived the plaintiffs of equal protection and due process; and, that the VA treated African American veterans differently than similarly situated white veterans by compensating only white soldiers for their service in Chemical Warfare Units. Plaintiffs seek monetary benefits,

rights to medical care, and educational benefits.

On May 18, 2001, defendants' filed a motion to dismiss plaintiffs' complaint for lack of federal subject matter jurisdiction. Docket No. 12. On July 12, 2001, the Honorable Gregory A. Presnell denied without prejudice defendants' motion to dismiss in order to allow plaintiffs an opportunity to add an "indispensable party" to the complaint. *See* Docket No. 21. Notwithstanding the denial of the motion to dismiss, plaintiffs filed a "Response" to the motion on September 11, 2001. Docket No. 26. Because plaintiffs did not add a party to the complaint, on March 18, 2002, Judge Presnell reinstated defendants' original motion to dismiss. Docket No. 32. On April 15, 2002, plaintiffs filed a "Supplemental Memorandum" in opposition to the reinstated motion to dismiss. Docket No. 35. This Court has considered the parties' pleadings and plaintiffs responses at both Docket Nos. 26 and 35 when ruling on the present motion to dismiss. For the reasons that follow, the defendants' motion to dismiss should be granted. However, *pro se* plaintiffs should be provided with an opportunity to cure the deficiencies identified herein by filing an amended complaint.[1]

## I. *APPLICABLE LAW*

### A. *Standard of Review*

A court should not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley*

*v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990); *Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986); *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir. 1985) (threshold is "exceedingly low"). In determining whether to dismiss a case, the Court accepts the allegations in the complaint as true, and otherwise views the allegations in the light most favorable to the plaintiff. *Linder v. Portocarrero,* 963 F.2d 332, 334 (11th Cir.1992) citing *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.,* 711 F.2d 989, 994–95 (11th Cir.1983). The Court does not generally accept conclusory allegations as true. *See South Florida Water Management District v. Montalvo,* 84 F.3d 402, 408 n. 10; *accord, Associated Builders, Inc. v. Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir.1974).

### B. *Federal Tort Claims Act*

Under traditional principles of sovereign immunity, the United States is immune from suit except to the extent the government has waived its immunity. In 1946, Congress adopted the Federal Tort Claims Act ["FTCA"], 28 U.S.C. §§ 1346(b), 2671 *et seq.,* which, subject to numerous exceptions, waives the federal government's sovereign immunity for claims based on the negligence of its employees. The FTCA authorizes suits against the United States for damages:

> for injury or loss of property, or personal injury or death caused by the negli-

---

1. At the April 24, 2002 hearing, the Court explained to plaintiffs that the Estate of Robert Cheves could not proceed *pro se. See* Local Rule 2.03(d). An Estate may appear and be heard only through counsel admitted to practice in the Court pursuant to Rule 2.01 or Rule 2.02. *Id.* Upon this Court's inquiry, the plaintiffs were unable to state in what capacity plaintiffs brings this suit—*i.e.,* as executors, representatives, or beneficiaries of the Estate. An amended complaint shall clearly respond to this Court's inquiries regarding the Estate.

gent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The FTCA further provides that the United States shall be liable with respect to tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

 Before a plaintiff may bring suit against the United States in Federal Court under the FTCA, he must present his claim to the appropriate federal agency pursuant to 28 U.S.C. § 2675(a).[2] *See Molinar v. United States*, 515 F.2d 246, 249 (5th Cir.1975). This procedure is jurisdictional and cannot be waived. *Crow v. United States*, 631 F.2d 28, 30 (5th Cir. 1980). In order to satisfy the administrative notice requirements set forth in § 2675(a), a claimant must: 1.) give the agency written notice of the claim to enable the agency to investigate; and 2.) place a value on the claim. *Adams v. United States*, 615 F.2d 284, 289 (5th Cir. 1980). The notice must be provided in writing to the appropriate federal agency within *two years after the claim accrues* or it is forever barred. 28 U.S.C. § 2401(b); *Williams v. United States*, 693 F.2d 555, 557 (5th Cir.1982). A court lacks subject matter jurisdiction over a federal tort suit when the plaintiffs have failed to exhaust their administrative remedies under the FTCA. *See United States v. Kubrick*, 444 U.S. 111, 117–18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).

 The substantive law of the state where the tortious act or omission occurred governs a claim brought under the FTCA. *See Creekmore v. United States*, 905 F.2d 1508, 1510 (11th Cir.1990). Here, the complaint alleges that the VA hospital in St. Petersburg, Florida provided the medical treatment at issue. It is undisputed that the substantive law of Florida controls the outcome of claims brought under the FTCA.

### B. *Veteran's Judicial Review Act*

 Federal courts are courts of limited jurisdiction. Section 511 of Title 38, formerly § 211, precludes judicial review of veterans' benefits determinations. The 1970 version of § 211(a) provided that:

the decisions of the Administrator on any question of law or fact under any law administered by the Veteran's Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.

38 U.S.C. § 211(a) (*quoted in Johnson v. Robison*, 415 U.S. 361, 365 n. 5, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974)).

In *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), the Supreme Court held that § 211(a) precluded judicial review of decisions "made by the Administrator in the interpretation or application of a particular provision of the statute to a particular set of facts," but did not preclude review of the very statute itself. *Id.* at 367, 94 S.Ct. 1160. Relying on *Johnson*, courts have held that § 211 does not bar suits in federal district court challenging the constitutionality of the

---

**2.** 28 U.S.C. § 2675(a) states that "the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."

statutes underlying the veterans' benefits program, but that § 211 does bar challenges to individual benefits determinations. *Anderson v. Veterans Administration*, 559 F.2d 935, 936 (5th Cir.1977). Some courts extended the *Johnson* holding to constitutional challenges to policies and procedures promulgated by the VA. *See Arnolds v. Veterans' Administration*, 507 F.Supp. 128 (N.D.Ill.1981).

The current version of § 511 provides:

The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to [the exceptions listed in] subsection (b), the decision of the secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

38 U.S.C. § 511(a) (1991).

In 1988, Congress passed the Veterans' Judicial Review Act ("VJRA"), Pub.L.No. 100–687, 102 Stat. 4105 (1988), which clearly announced Congress's intent to preclude review of benefits determinations in federal district courts. The VJRA established an exclusive review procedure by which veterans may resolve their disagreements with the Department of Veterans Affairs. The process begins when a claimant files for benefits with a regional office of the Department of Veterans Affairs. Upon receiving a decision from the regional office, the claimant may appeal to the Board of Veterans' Appeals ("the Board"), which either issues the final decision of the Secretary or remands the claim to the regional office for further development and subsequent appeal. *See* 38 U.S.C. § 7104. An adverse decision by the Board may subsequently be appealed to the Court of Veterans Appeals.[3] 38 U.S.C. § 7252(a). The Court of Veterans Appeals, an Article I court established by Congress in the VJRA, has exclusive jurisdiction over appeals from the final decisions by the Board. 38 U.S.C. §§ 7251, 7252(a), 7266.

Under limited circumstances, a claimant may then appeal a decision of the Court of Veterans Appeals to the United Court of Appeals for the Federal Circuit. 38 U.S.C. § 7292 (federal circuit review may be obtained where the validity of a statute or regulation is questioned or where a controlling question of law is in dispute). Congress expressly gave the Federal Circuit "exclusive jurisdiction" to "interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c). The United States Court of Appeals for the Federal Circuit has exclusive appellate jurisdiction over decisions of the Court of Veterans Appeals. 38 U.S.C. § 7292. If necessary, a claimant may petition the United States Supreme Court to review the decisions of the Court of Appeals for the Federal Circuit. *See* 38 U.S.C. § 7291.

The United States Court of Appeals for the Eleventh Circuit has not addressed the issue of whether the VJRA precludes judicial review of constitutional challenges to VA benefit decisions. However, since the enactment of the VJRA, "federal courts have held repeatedly that they lack jurisdiction over constitutional challenges to VA benefits decisions." *Beamon v. Brown*, 125 F.3d 965, 972 (6th Cir.1997) (citing *Zuspann v. Brown*, 60 F.3d 1156 (5th Cir.1995) (district court lacked juris-

---

**3.** As of March 1, 1999, the Court of Veterans Appeals is now the United States Court of Appeals for Veterans Claims.

diction over benefits claim where plaintiff alleged due process violation)); *Sugrue v. Derwinski*, 26 F.3d 8, 10–11 (2d Cir.1994); *Hicks v. Veterans Administration*, 961 F.2d 1367 (8th Cir.1992); *Larrabee by Jones v. Derwinski*, 968 F.2d 1497, 1500 (2nd Cir.1992) (federal courts precluded "from hearing claims—even if draped in constitutional terms—seeking a particular type or level" of VA benefits); *Pate v. Dept. of Veterans Affairs*, 881 F.Supp. 553, 555–56 (M.D.Ala.1995) (district court lacked jurisdiction over benefits claim, "although couched in terms of a constitutional claim").

As the Sixth Circuit noted in *Beamon:*

The history of veterans' benefits legislation reinforces our conclusion that Congress intended to vest the [Court of Veterans Appeals] with exclusive jurisdiction over constitutional challenges to VA decisions. Before it was amended in 1988, 38 U.S.C. § 211(a), the predecessor to § 511(a), attempted to bar district court review of all VA decisions. Because Congress had not yet established the [Court of Veterans Appeals] with its jurisdiction to review VA decisions relating to benefits, § 211(a) might have been interpreted as a complete bar to the judicial review of all challenges to such decisions. Wary of the constitutional danger of precluding judicial review of constitutional claims, the Supreme Court decided in *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), that § 211(a) precluded review of decisions made by the VA Administrator, but did not preclude district court jurisdiction over constitutional challenges to acts of Congress relating to veterans benefits.

125 F.3d at 971–72 (internal citations omitted).

The general rule prior to the enactment of the VJRA was that there was no judicial review of a VA decision. *Beamon*, 125 F.3d at 972; *Sugrue v. Derwinski*, 26 F.3d 8, 12—13 (2d Cir.1994) ("Congress has accorded frequent attention to the issue of judicial review of VA benefits determinations, and only in 1988 did it provide a limited form of review when it established the United States Court of Veterans Appeals"). Because the VJRA specifically granted the Court of Veterans Appeals jurisdiction to review constitutional challenges to claims processing procedures, the reasoning of the Supreme Court in *Johnson v. Robison* is no longer applicable. This Court finds that Congress clearly intended to preclude district court jurisdiction over VA decisions relating to benefits claims, including decisions of constitutional issues.[4] 38 U.S.C. § 511 (formerly section 211). The decisions of the VA as to *any* question of law or fact affecting the benefits to veterans or their dependents are "final and conclusive and may not be reviewed by any other official or by any court." 38 U.S.C. § 511(a).

## II. APPLICATION

### A. Background Facts

The Court views, as it must, the allegations in the complaint in the light most favorable to plaintiffs. According to the complaint, Cheves served in the World War II Army Chemical Warfare Unit at

---

4. The Court notes that, even after the enactment of the VJRA, district courts are *not precluded* from reviewing challenges to the constitutionality of acts of Congress affecting veterans benefits. *See Beamon*, 125 F.3d at 973; *Disabled American Veterans v. U.S. De-partment of Veterans Affairs*, 962 F.2d 136 (2d Cir.1992). The VJRA precludes district courts from reviewing challenges to the constitutionality of a decision of the VA. 125 F.3d at 973.

Camp Sibert in Alabama from 1942 through 1944, when he was honorably discharged. During that service, Cheves was exposed to a various toxic chemicals, causing him to be discharged with a 10% disability rating as diagnosed by the Army's own doctors.

Various hospitals operated by the Veterans Affairs treated Cheves from 1944 through the mid 1960s. During this time, the VA raised Cheves's disability rating to 30%. In 1962, Cheves suffered a work place injury when a 600 pound forklift crushed his legs. Subsequently, in 1966, Cheves reported to a VA hospital in St. Petersburg, Florida with complaints of "bad nerves" and radically high blood pressure. The VA diagnosed Cheves—who was then 45 years old and had no history of mental illness—with full-blown paranoid schizophrenia. The VA's treatment records described Cheves as completely delusional and incapable of rational thinking. The VA treated Cheves by administering five electric shock treatments. Cheves's disability rating was temporarily increased to 100 % during his two month hospital stay at the St. Petersburg VA facility, then reduced to 50 % upon his discharge.

According to the complaint, at the time of Cheves's discharge from the St. Petersburg VA facility, Cheves was permanently affected and impaired in his cognitive abilities by the damage caused by the five electric shock treatments. The prescribed psychotropic medications further suppressed Cheves's cognitive functioning. The VA's doctors specifically stated that Cheves could not work and would never be able to sustain employment. Although the VA's doctors recommended a rating of 100% disability, Cheves received only a 50% disability rating from the VA.

In 1971, Cheves began treatment with a private psychiatrist, Dr. William J. Mueller. Dr. Mueller diagnosed Cheves as completely unemployable due to his severe physical injuries and impaired cognitive functioning, and immediately initiated a campaign to prompt the VA to adjust Cheves's disability rating to 100%. For five years, Dr. Mueller wrote and called the VA on this matter. In 1976, Dr. Mueller's treatment notes show that the VA told him that Cheves's disability rating had been raised to 100%. In fact, the VA raised Cheves's disability rating to only 70%.

Plaintiffs claim that Cheves, who met the standard for 100% disability, was entitled to cash benefits approximately three times the amount of those allotted to a 50% disabled veteran, as well as educational benefits, medical care for his wife and children, eligibility for financing for housing and home improvements, and other benefits. Plaintiffs further allege that the VA failed to provide Cheves with notice or opportunity to be heard regarding his disability rating adjustments or his appellate rights—rights that were commonly and frequently exercised by white veterans.

Plaintiffs also claim that during the period between the 1970s and Cheves's death in 1989, the VA compensated white veterans of Chemical Warfare Units. Approximately, $400,000 was given to each white veteran or the veteran's surviving family. Plaintiffs claim that the VA did not include any African American veterans or any of the racially segregated Chemical Warfare Units, such as Sibert, in the receipt of such compensation—restricting the compensation solely to white veterans and their families. Moreover, plaintiffs claim that Cheves's progressively degenerative condition resulted from his exposure to certain chemicals while serving in the Chemical Warfare Unit.

Cheves died in May 1989. Subsequently, Cheves's widow, Corine Cheves, applied

for survivor's benefits. The VA initially denied Mrs. Cheves's application due to Cheves's rating of less than 100% disabled. After several years of appeals before the administrative entities, in March 1992, the Board of Veterans' Appeals awarded Corrine Cheves survivor's benefits. The Board of Veterans' Appeals allegedly stated that the VA had ignored all of its own doctors' unanimous recommendations that Cheves was completely unemployable and thus 100% disabled.

In November 1996, while appealing various denials of benefits to plaintiffs, plaintiffs first became aware of Cheves's electric shock treatments, the VA's failure to obtain informed consent from Cheves or his wife regarding shock treatment, and the VA's failure to inform any of the Cheves's treating physicians of Cheves's service in the Chemical Warfare Unit and the progressive degenerative condition resulting from his service. Plaintiffs claim that as a result of the VA's conduct, they have suffered the loss of monetary benefits, pain and suffering, rights to medical care, and educational benefits.

### B. *Analysis of Individual Counts*

#### 1. *Count I—Medical Negligence*

■ Count I asserts that the VA breached the standard of care by failing to properly examine, interview, question, or otherwise follow accepted and required diagnostic protocols in diagnosing Robert Cheves, Jr. as a paranoid schizophrenic in 1966. Count I further asserts that the VA further breached the standard of care by administering electric shock treatment to Cheves. Complaint, at 10—11.

Count I asserts a cause of action for medical malpractice. As such, the only possible remedy is under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.* Plaintiffs' medical malpractice claim fails for two reasons.

First, plaintiffs failed to show that they exhausted their administrative remedies. Specifically, plaintiffs failed to state whether they filed a written administrative claim with the appropriate federal agency within two years of the alleged injury. 28 U.S.C. § 2675(a). Second, under Florida law, no action for personal injury survives the death of a victim. Any such action pending at the time of death abates with the death of the victim. Fla. Stat. § 768.20. Upon this Court's inquiry as to whether an amendment to the complaint could cure the identified deficiencies, plaintiffs agreed to dismiss Count 1 of the complaint.

#### 2. *Count II—Assault and Battery*

■ In Count II, plaintiffs claim that the alleged medical malpractice, which formed the basis for Count I, also constitutes assault and battery. Complaint, at 14—15. The jurisdictional basis for this Count is not alleged. Nothing indicates that the United States (and by extension the VA) has consented, by waiver of sovereign immunity, to suits based upon battery—except in the case of law enforcement officers. *See* 28 U.S.C. § 2680(h). Consequently, sovereign immunity bars Count II, and it must be dismissed.

Additionally, under Florida law, Cheves's alleged assault and battery claim would have abated with his death. *See* Fla. Stat. § 768.20. In fact, Cheves's claim would have ceased to be viable long before his death. The statute of limitations for intentional torts is four years. Fla. Stat. § 95.11. At the April 24, 2002 hearing, the plaintiffs agreed to dismiss the assault and battery claim.

#### 3. *Count III—Violation of Due Process*

■ Count III asserts that the VA violated plaintiffs' due process rights, and

those of Cheves, by depriving them of notice and the opportunity to be heard before depriving them of a property interest. Specifically, plaintiffs allege that the VA failed to inform Cheves of his right to appeal his disability rating and denial of benefits. *See* Complaint, at 15—16.

It is well established that 38 U.S.C. § 511 precludes judicial review of VA benefits. Moreover, the statutory bar to judicial review may not be circumvented by characterizing what are in essence challenges to VA benefits determinations in constitutional terms. Here, the plaintiffs are not challenging the constitutionality of a particular act of Congress. Rather, plaintiffs challenge the constitutionality of the VA's procedures in processing plaintiffs' individual claims.

Congress has set up an exclusive review procedure for decisions involving veterans' benefits determinations. This Court lacks subject matter jurisdiction to hear plaintiffs' challenges to the VA's decisions to deny benefits. Even assuming that determinations made by the VA were wrong, the plaintiffs may not bring this case ·in federal district court. The facts *as alleged in the complaint* indicate that this Court has no subject matter jurisdiction to hear this case.

### 4. *Count IV—Violation of Equal Protection*

■ In Count IV, plaintiffs allege that the VA has violated the Constitution by treating African American veterans differently than similarly situated white veterans. Specifically, plaintiffs claim that the VA racially discriminated in its treatment and handling of plaintiffs claims. Complaint, at 18. Plaintiffs also claim that the VA compensated white soldiers who served in World War II Chemical Warfare Units, but failed to compensate similarly situated African American veterans of the World

War II Camp Sibert Chemical Warfare Unit. Complaint, at 19. Plaintiffs further allege that the "above-described actions and omissions of Defendant were based on the VETERAN'S and plaintiffs's race." Complaint, at 17.

For the reasons stated above, 38 U.S.C. § 511 precludes judicial review of VA benefits. This Court simply lacks jurisdiction to review the VA's handling and processing of the plaintiffs' benefit claims. Whether the VA's procedures caused unlawful or unconstitutional delays in the administration of veterans benefits are questions within the exclusive jurisdiction of the Board, the Court of Veterans Appeals, and the Court of Appeals for the Federal Circuit.

■ Plaintiffs cite no statute waiving sovereign · immunity applicable to their Equal Protection claim. There is no implied cause of action against the Untied States under the Constitution. *United States v. Timmons,* 672 F.2d 1373, 1380 (11th Cir.1982). Plaintiffs rely on 42 U.S.C. § 1983. However, § 1983 does not apply to actions taken under color of *federal law. Bendiburg v. Dempsey,* 909 F.2d 463, 468 (11th Cir.1990).

■ Furthermore, although plaintiffs do not argue that this is a *Bivens*-type action, that appears to be the nature of the claim for compensatory damages. In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court allowed a plaintiff to seek money damages from federal officials for alleged violations of certain constitutional rights, much akin to a § 1983 action against state or local officials. However, the Supreme Court has restricted the availability of a *Bivens* action where there is an adequate congressionally created administrative remedy. *Bush v. Lucas,* 462

U.S. 367, 368, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). This Court agrees with the circuit courts that have held that the comprehensive remedial structure of the VJRA precludes *Bivens* actions against VA officials. *See Sugrue v. Derwinski,* 26 F.3d 8, 12 (2d Cir.1994); *Zuspann v. Brown,* 60 F.3d 1156, 1160–61 (5th Cir. 1995); *Hicks v. Small,* 69 F.3d 967, 969 (9th Cir.1995).

#### 5. *Count V*—Loss of Consortium

■ In Count V, plaintiffs seek compensation for the loss of "consortium" of Cheves, claiming that the alleged medical malpractice described in Count I deprived plaintiffs his comfort, instruction, guidance, affection, and support. Complaint, at 20. Loss of consortium is a claim for a type of damage flowing from a cause of action, and not itself a cause of action.

As stated above, plaintiffs cite no statute waiving sovereign immunity as to a medical malpractice claim. The only possible waiver is under the Federal Tort Claims Act, 28 U.S.C. § 2675(a). Even if plaintiffs have stated a FTCA claim, Count V must be dismissed for lack of subject matter jurisdiction because plaintiffs failed to exhaust their administrative remedies under the FTCA. Specifically, plaintiffs failed to file a written administrative claim with the appropriate federal agency within two years of the date of the alleged injury. 28 U.S.C. § 2675(a). Plaintiffs may file a suit against the United States under the FTCA only after the federal agency has denied the claim. This Court lacks subject matter jurisdiction over a federal tort suit when the plaintiffs have failed to exhaust their administrative remedies under the FTCA.

As with Count I, even if plaintiffs filed an administrative claim immediately, the FTCA's two-year statute of limitations would bar recovery for loss of consortium.

28 U.S.C. § 2401(b). Plaintiffs have not provided sufficiently compelling reason to justify why it took over thirty years to "discover" the alleged medical malpractice. Upon this Court's inquiry during the April 24, 2002 hearing as to whether an amendment to the complaint could cure the identified deficiencies, plaintiffs decided to dismiss the loss of consortium claim.

### III. *CONCLUSION*

For the foregoing reasons, it is

**RECOMMENDED** that defendant's motion to dismiss [Docket No. 12] be **GRANTED.** It is

**FURTHER RECOMMEND** that plaintiffs, who are proceeding *pro se,* be permitted to file an amended complaint within 14 days of the district court's ruling as to any cause of action that has not be voluntarily withdrawn. Any amended complaint must cure the deficiencies identified by this report and recommendation or the case may be dismissed. In the amended complaint, plaintiffs shall properly identify and set forth the specific causes of action under which they seek to proceed, the factual allegations supporting those causes of action, and the basis for the jurisdiction of the United States District Court for the Middle District of Florida.

Failure to file and serve written objections to the proposed findings and recommendations in this report, pursuant to 28 U.S.C. § 636(b)(1)(B) and (e) and Local Rule 6.02, within ten days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

July 26, 2002.