John S. DUKE, Plaintiff,

v.

UNITED STATES of America, Defendant.

CIVIL ACTION NO. 03–4613.

United States District Court, E.D. Pennsylvania.

March 3, 2004.

John S. Duke, Philadelphia, PA, Pro Se.

Nancy L. Griffin, Philadelphia, PA, for Defendant.

## ORDER AND MEMORANDUM

DuBOIS, District Judge.

### ORDER

**AND NOW,** this 3rd day of March, 2004, upon consideration of the United States' Motion for Summary Judgment (Document No. 13, filed January 2, 2004), following a hearing on November 13, 2003, with both parties present, **IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.**

## MEMORANDUM

### I. *BACKGROUND*

#### A. PLAINTIFF'S COMPLAINT

Plaintiff, an Army veteran, filed the Complaint in this case on August 8, 2003. The gravamen of the Complaint is plaintiff's belief that he is entitled to 100 percent service connected disability benefits retroactive to his discharge from the Army in 1946. *See* Tr. of Nov. 13, 2003 Hr'g at 12. Plaintiff's claims relate to alleged improper medical treatment for a number of ailments, alleged errors made by the Department of Veterans Affairs ("DVA") in his medical records, and decisions made by the DVA as to the severity and service connected nature of his disability.

From the Complaint, it is difficult for the Court to determine the legal basis of plaintiff's claims. However, when considering the sufficiency of a *pro se* plaintiff's complaint, the Court must be mindful that *pro se* plaintiffs are not held to as high a pleading standard as other litigants and *pro se* pleadings must be construed liberally. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Counts one and two of the Complaint assert claims for medical malpractice. Counts three and five challenge benefits determinations made by the DVA. Count four alleges that the DVA refused to provide plaintiff with copies of his medical record. In count six, plaintiff contends that defendant made errors in his Department of Veterans Affairs Adjudication and Veterans Record ("Veterans Records"). Count seven reiterates the allegations in counts one, two, three, four, and five. Thus, the Court will treat that part of count seven which deals with allegedly negligent medical treatment-similar to counts one and two-as a tort claim. That part of count seven that alleges errors in plaintiff's Veterans Record will be treated

the same as count four. That part of count seven that challenges DVA benefits decisions will be considered with counts three and five. Counts eight and nine assert that defendant discriminated against plaintiff on the basis of his race and that the DVA procedures for determining his service connected benefits denied him his Constitutional due process rights.

Defendant moved for summary judgment, asserting, *inter alia*, that this Court does not have jurisdiction to review DVA benefits determinations and that plaintiff's remaining claims are either moot, barred by sovereign immunity, or barred by plaintiff's failure to exhaust administrative remedies. Mot. for Summ. J. at 2, 9, 11. For the reasons set forth in this Memorandum, the Court grants defendant's Motion for Summary Judgment.

### B. PLAINTIFF'S MEDICAL HISTORY

Plaintiff, *pro se*, is an eighty-one year old veteran of the United States Army ("Army") of African American ancestry. Compl. ¶ 2. He was recruited by the Army to perform in an "all black Army band" in December of 1942 (*Id.* ¶ 4) and was inducted into the Army on January 22, 1943. *Id.* ¶ 6.

On November 17, 1945, while still in the Army, plaintiff developed "complete right facial paralysis" and was hospitalized until January 15, 1946. *Id.* ¶ 7–8. Despite his claim that "his right facial paralysis made it impossible for [him] to play the trumpet," plaintiff was returned to active duty and the band on January 17, 1946. *Id.* ¶¶ 8–10. According to plaintiff, he received no further treatment for this condition despite the fact that "his face remained twisted, his eyes watered, and he drooled incessantly" and "was never able to pay the trumpet again." *Id.* ¶ 11.

In addition to the claimed inadequate medical treatment, plaintiff asserts that defendant made a number of errors in his Veterans Records. Specifically, he argues that his record does not mention his "service connected illness [facial paralysis] or his loss of occupational speciality [ability to play the trumpet]." *Id.* ¶ 12. Plaintiff also claims: (1) that an "Authorization for Furnishing Medical or Dental Services dated October 1, 1946" incorrectly states that he received treatment for Bell's Palsy right, instead of Bell's Palsy left; (2) that his records state he left music school for "personal reasons," even though he was receiving treatment for panic attacks; (3) that his record incorrectly states he was treated for a left shoulder condition; and (4) that a 1948 DVA report does not mention his left facial history and incorrectly describes his treatment history. Compl. ¶¶ 20, 21, 22, 27.

According to plaintiff, he was given a "convenience of the government discharge" on May 12, 1946. *Id.* ¶ 14. Prior to his discharge, plaintiff says he was told to sign a "claims form" and assured that "his medical condition would be taken care of by the defendant." *Id.* ¶ 13. In addition, he "was obliged to sign pension and compensation documents that stated that upon discharge plaintiff was not to receive hospitalization or domiciliary care by the U.S. or any political subdivision thereof." *Id.* ¶ 14.

After his discharge, plaintiff claims he began experiencing panic attacks. The first attack occurred on June 1, 1946, and plaintiff received treatment from a private physician. *Id.* ¶ 15. After the third panic attack, plaintiff allegedly reported to a DVA mental hygiene clinic in Detroit, Michigan. *Id.* ¶ 16. At about the same time, plaintiff contends he also developed left facial paralysis. *Id.* ¶ 19. Over the next year, plaintiff claims his condition

worsened and he was forced to quit music school. *Id.* ¶ 21. By September 27, 1947, plaintiff asserts that he was hospitalized— "unable to talk and totally out of touch with reality, confined to bed, suffering conversion reactions, anxiety, feelings of impending danger to himself and to others, tremors, tensions, hyperhidrosis, symptoms of distress, belching gas and palpitations of the heart." *Id.* ¶ 25.

Over the ensuing decades, plaintiff describes continuing health problems and repeated attempts by the DVA to deny him the benefits he claims he deserved. In 1958, plaintiff says he was "sedated and locked up with the mentally insane" during a hospitalization in Detroit, Michigan. *Id.* ¶ 29. In 1968, plaintiff suffered from a body rash and panic attacks and contends that the DVA again denied his claim for disability benefits related to these conditions. *Id.* ¶ 30. When he asked the DVA for a copy of his Veterans Record in November of 2002, he claims he was informed that the DVA had lost the file. *Id.* ¶ 34–35.

The DVA's account of plaintiff's request for his file and its description of plaintiff's benefits history differs from plaintiff's version of the facts in a number of respects. Defendant provided the Court with a three volume, 2,135 page copy of plaintiff's Veterans Record. The record details plaintiff's medical treatment and his administrative proceedings before the DVA. According to his Veterans Record, plaintiff reviewed his file on a number of occasions and received a copy of the file on at least six occasions.[1] In addition, a copy of plaintiff's Veterans Record was sent to the office of Senator Arlen Specter at plaintiff's request. Mot. for Summ. J. at Exhibit A ¶ 20 (Declaration of Gary Hodge, Supervisory Veterans Service Representative, Department of Veterans Affairs); Department of Veterans Affairs Adjudication and Veterans Record for John S. Duke ("Vets.Rec.") at 1423. Finally, in a declaration attached to defendant's Motion, Gary Hodge, a Supervisory Veterans Service Representative for the DVA, describes a November 21, 2003 meeting with plaintiff and Assistant United States Attorney Nancy Griffin, defendant's attorney. At this meeting, plaintiff was offered another copy of his Veterans Record but, according to Hodge, "indicated" that he already had a copy. Exh. A ¶ 21.

## C. PLAINTIFF'S DVA BENEFITS HISTORY

Plaintiff's Veteran's Record contains transcripts, records, and decisions relating to plaintiff's benefits proceedings before the DVA. Hodge, "an employee of the [DVA] with substantial experience with [DVA] benefits," summarizes these proceedings in his declaration. Mot. for Summ. J. at 2 & Exhibit A ¶ 1–3 (Declaration of Gary Hodge, Supervisory Veterans Service Representative, Department of Veterans Affairs). According to this summary and plaintiff's Veterans Record:

Plaintiff was honorably discharged from the Army in May of 1946. Ex. A ¶ 3 and Vets. Rec. at 6, 1419. A report of his last physical examination prior to discharge lists a diagnosis of "Bell's palsy, right side of face" and gives an onset date of Novem-

---

1. Plaintiff reviewed his file on June 23, 1978, March 18, 1987, August 19, 1992, August 28, 1996, June 10, 1999, and May 20, 2002. Mot. for Summ. J. at Exhibit A 19 (Declaration of Gary Hodge, Supervisory Veterans Service Representative, Department of Veterans Affairs); Department of Veterans Affairs Adjudi-

cation and Veterans Record for John S. Duke ("Vets.Rec.") at 344, 92, 1455, 865, 1446, 1476. Plaintiff received a copy of his records on October 10, 1978, March 17, 1986, August 19, 1992, July 10, 2001, and May 29, 2002. Mot. for Summ. J. at Exhibit A 19; Vets. Rec. at 340, 97, 1456, 91, 1474.

ber 1945 for this condition.[2] Vets. Rec. at 34, block 11. There is no evidence in this report of a psychiatric disorder. *Id.* at block 32.

After plaintiff's discharge, the DVA initially gave plaintiff a 10 percent disability rating[3] for his Bell's Palsy effective May 12, 1946. Ex. A ¶ 5, Vets. Rec. at 656. This rating was increased to 30 percent effective May 12, 1946, by a rating decision dated September 18, 1946. Ex. A ¶ 5, Vets. Rec. at 568.

On April 29, 1969, Mr. Duke submitted a claim to the DVA requesting service connection[4] for a mental disorder as secondary to his service connected Bell's Palsy. The DVA denied service connection in a rating decision dated April 22, 1970 on the ground that there was no record of mental illness while he was in the service, within one year of discharge, or as secondary to his Bell's Palsy. Ex. A ¶ 6, Vets. Rec. at 1247–1248.

On March 18, 1987, Mr. Duke filed another claim for service connection for his mental disorder as secondary to his Bell's Palsy. On November 14, 1987, the DVA granted service connection for his anxiety disorder, and this disorder was assigned a disability rating of 30 percent effective March 18, 1987. Ex. A ¶ 7, Vets. Rec. at 1416–18. When this disability rating was combined with the disability rating for his Bell's Palsy, plaintiff's combined service connected evaluation was increased to 50 percent.[5] Exh. A 8, Vets. Rec. at 1416–18.

Plaintiff appealed this disability rating and the effective date assigned by the DVA. He provided testimony at a hearing on November 10, 1988. Ex. A ¶ 9, Vets. Rec. at 1083–1101. After this hearing, the hearing officer increased the individual disability evaluation for plaintiff's anxiety disorder to 50 percent in a decision dated April 21, 1989. Vets. Rec. at 1059–60. When plaintiff's 50 percent anxiety disability and 30 percent disability from Bell's

2. Bell's Palsy is defined as "paralysis of the facial nerve causing muscular weakness in one side of the face with drooping of the corner of the mouth and inability to close the eye." *The New Shorter Oxford English Dictionary* 210 (Lesley Brown ed., 3rd ed.1993).

3. "The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations." 38 C.F.R. § 4.1.

4. "The term 'service-connected' means, with respect to disability or death, that such disability was incurred or aggravated, or that the death resulted from a disability incurred or aggravated, in line of duty in the active military, naval, or air service." 38 U.S.C. § 101(16).

5. According to Mr. Hodge, who oversees the adjudication of veteran's claims for the DVA's Philadelphia Regional office, this percentage is calculated in the following manner: "when evaluating a veteran's total disability level, DVA first evaluates each individual service connected disability. Each condition is assigned an individual disability evaluation determined by comparing symptoms and physical findings against criteria set by law. Once each service connected condition is evaluated, they are combined to determine the total combined evaluation. A combined evaluation results from the consideration of the efficiency of the individual as affected first by the most disabling conditions, then by the less disabling condition, then by other less disabling conditions, if any, in the order of severity. Thus, considering Mr. Duke's two disabilities both evaluated as 30 percent disabling, his combined evaluation is 50 percent. If he has one disability that is 30 percent disabling, then he remains 70 percent able. His additional 30 percent disability limits his remaining 70 percent ability by 30 percent or by an additional 21 percentage points. Therefore, Mr. Duke is 51 percent disabled. This combined evaluation will be converted to the nearest degree divisible by 10 which is 50 percent." *See* 38 C.F.R. § 4.25 (describing this calculation).

Palsey were considered together, his combined evaluation became 70 percent, effective March 18, 1997. Ex. A ¶ 9, Vets. Rec. at 1059–1060, 1670–1671.

Plaintiff appealed this decision, requesting an earlier effective date for his disability benefits. The appeal was forwarded to the DVA Board of Veterans Appeals ("Board"). In a decision dated May 10, 1991, the Board denied plaintiff's request for an earlier effective date for his anxiety disorder. Ex. A ¶ 10, Vets. Rec. 895–899.

On March 12, 1991, plaintiff again presented a claim for an earlier effective date for his anxiety disorder. He also claimed service connection for arthritis of the thoracic spine. Ex. A 12, Vets. Rec. at 933. The DVA denied an earlier effective date in a rating decision dated January 8, 1992. Ex. A 12, Vets. Rec. at 873–876. However, in that decision, the DVA granted plaintiff a 10 percent disability rating for arthritis. This additional rating was not sufficient to increase his overall disability evaluation above 70 percent. Ex. A ¶ 12, Vets. Rec. at 873–876.

Plaintiff filed a Notice of Disagreement with the January 8, 1992 rating decision on February 7, 1992. This is the first step in appealing a decision to the Board of Veterans Appeals. Vets. Rec. at 1957. By a decision dated January 20, 1995, the Board denied entitlement to an earlier effective date for plaintiff's anxiety disorder. Ex. A ¶ 13, Vets. Rec. at 1661–1666. This decision was later upheld by the United States Court of Appeals for Veterans Claims (formerly the Court of Veterans Appeals) in a

decision dated June 5, 1997. Ex. A ¶ 13, Vets. Rec. at 1602–1607.

On April 28, 1998, plaintiff presented a claim to the DVA seeking individual unemployability benefits and an increased disability rating for his service connected disabilities. On May 25, 1999, his service connected anxiety disorder evaluation was increased to 70 percent effective April 28, 1998. With plaintiff's 70 percent disability for his anxiety disorder, 30 percent disability for Bell's Palsy, and 10 percent disability for arthritis, his combined disability evaluation was increased to 80 percent. Ex. A ¶ 14, Vets. Rec. at 1565–70.

In addition, on May 25, 1999, the DVA found plaintiff was entitled to individual unemployability benefits. This determination allowed plaintiff to receive compensation at the 100 percent rate, even though his combined disability was only 80 percent.[6] *Id.* As a result, the DVA considered plaintiff permanently and totally disabled as of that date. Ex. A ¶ 16.

On June 8, 1999, plaintiff filed a Notice of Disagreement with the DVA's May 25, 1999 decision and requested a 1946 effective date for his individual unemployability benefits. At a DVA hearing on December 16, 1999, plaintiff was provided an opportunity to argue and present evidence as to why his 100 percent rating should be retroactive to 1946. Ex. A 17, Vets. Rec. at 1533–1553. In a March 20, 2002 statement of the case, the DVA found no basis to consider the earlier effective date. Vets. Rec. at 1479–1495. Plaintiff had until to May 20, 2002 to file a substantive appeal with the Board. 38 U.S.C. § 7105(d)(3).

6. Individual unemployability benefits allow a total disability rating for compensation to be assigned, where the combined evaluation is less than total, "when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities: Provided That, if there is only one such disability, this disability shall be ratable at 60 percent or more, and that, if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more." 38 C.F.R. § 4.16(a).

He did not do so. According to Mr. Hodge, plaintiff does not have any appeals or claims pending with the DVA. Exh. A ¶ 17. As of January 21, 2004, plaintiff was receiving $2,239 a month in DVA benefits.

## II. *DISCUSSION*

### A. STANDARD FOR SUMMARY JUDGMENT

"[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[,]" summary judgment should be granted. Fed.R.Civ.P. 56(c). The Supreme Court describes the summary judgment determination as "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, "a motion for summary judgment must be granted unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir.1987).

"[O]n summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). The nonmoving party, however, cannot rely merely upon bare assertions, conclusory

allegations, or suspicions to support its claim. *Fireman's Ins. Co. v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982). When the movant files a properly supported motion for summary judgment, the burden shifts to the nonmoving party to prove "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. PLAINTIFF'S TORT CLAIMS (COUNTS ONE, TWO, AND SEVEN)

The Court will treat counts one, two and that part of count seven that alleges that plaintiff received negligent medical treatment while in the Army as tort claims. In count one, plaintiff alleges defendant "denied plaintiff medical treatment when he originally contracted right facial paralysis." Compl. 36. The Court will treat this as a claim for medical malpractice. Count two asserts that defendant "discharged plaintiff to duty after he developed right facial paralysis." *Id.* 38. The Court will also treat this as a claim for medical malpractice because plaintiff essentially argues that defendant returned him to duty before he recovered from his right facial paralysis. The Court will apply the same analysis to that part of count seven in which plaintiff makes similar allegations.

Plaintiff's tort claims are barred by sovereign immunity. "The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its

consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Sovereign immunity deprives a court of subject matter jurisdiction over claims against the United States. *Richards v. United States,* 176 F.3d 652, 654 (3d Cir. 1999). While a limited waiver of sovereign immunity exists for tort claims against the United States under the Federal Tort Claims Act, plaintiff's claims are barred by his failure to exhaust administrative remedies, the expiration of the statute of limitations, and the *Feres* doctrine.

### 1. Plaintiff's Tort Claims Are Barred by His Failure to Exhaust Administrative Remedies.

The Federal Tort Claims Act ("FTCA"), 28 U.S.C.A. § 2671 *et seq.,* is a statutory waiver of sovereign immunity for tort claims. *Gotha v. United States,* 115 F.3d 176, 179 (3d Cir.1997). The FTCA allows the government to be sued "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C.A. § 2674. However, as the FTCA is an express waiver of sovereign immunity, strict compliance with its provisions is required. *Livera v. First Nat'l Bank,* 879 F.2d 1186, 1194 (3d Cir. 1989).

As a prerequisite to suit under the FTCA, a claim must first be presented to the federal agency and be denied by the agency. The FTCA provides:

> An action shall not be instituted against the United States for money damages for injury or loss of property or personal injury ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing

and sent by certified or registered mail.

28 U.S.C. § 2675(a). "The statutory language is clear that a court does not have jurisdiction before administrative remedies have been exhausted, and a court must dismiss any action that is initiated prematurely." *Wilder v. Luzinski,* 123 F.Supp.2d 312, 313 (E.D.Pa.2000) (citing *McNeil v. United States,* 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); *Wujick v. Dale & Dale,* 43 F.3d 790, 793–94 (3d Cir.1994)).

Defendant submitted a declaration by Jose Lopez, the Regional Counsel for the DVA and the individual responsible for the administrative adjudication of claims against the DVA under the FTCA. Mot. for Summ. J. at Exh B 1,2 (Declaration of Jose H. Lopez). Mr. Lopez examined DVA records and determined that plaintiff never filed an administrative claim with the DVA. *Id.* at Exh. B 7. There is no evidence to contradict this statement. Consequently, the Court does not have jurisdiction to hear plaintiff's tort claims, and the government is entitled to summary judgment on counts one, two, and that part of count seven addressing allegedly negligent medical treatment on that ground.

### 2. Plaintiff's tort claims are barred by the FTCA's statute of limitations.

Plaintiffs tort claims are also time barred. The FTCA's statute of limitations provides that an administrative claim must be filed within two years of the claim's accrual. 28 U.S.C. § 2401(b). Plaintiff's medical malpractice claims relate to medical treatment he received "when he originally contracted right facial paralysis" in 1945 and the Army's decision to discharge plaintiff to duty in 1946. Compl. ¶¶ 36, 38. The statute of limitations for filing an ad-

ministrative complaint based on these claims expired more than fifty years ago. Thus, plaintiff's tort claims are barred by the FTCA's statute of limitations and the government is entitled to summary judgment on these claims for that additional reason.

### 3. *Plaintiff's tort claims are barred by the Feres doctrine.*

 Finally, the Supreme Court limited the right of recovery under the FTCA for members of the armed forces in *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950). In *Feres*, the Court held that the FTCA does not apply "where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950). The doctrine acknowledges:

> the peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty.

*United States v. Shearer*, 473 U.S. 52, 57, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985).

The Third Circuit has consistently applied the *Feres* doctrine to bar suits by active duty servicemembers under the FTCA. In *Loughney v. United States*, 839 F.2d 186 (3d Cir.1988), the court ruled that a medical malpractice claim based on treatment received while a member of the armed forces was barred by the *Feres* doctrine. According to the court, "*Feres* prohibits any case-by-case inquiry into whether judicial review of a service member's tort claim would unduly interfere with military operations. It is simply the military status of the claimant that is dispositive." *Id.* at 188.

Plaintiff's claims in counts one and two and the similar allegations in count seven relate to medical treatment he received and decisions made by doctors while he was a member of the Army. Because these claims "arise out of" injuries incurred "in the course of activity incident to service," they are barred by the *Feres* doctrine.

### C. VETERANS RECORDS

#### 1. *Plaintiff Has Been Provided with Copies of His Veterans Records (Count Six).*

Count six relates to defendants' alleged refusal to provide plaintiff with copies of his medical records. *Id.* 46. Because the Court finds that plaintiff was provided access to his records and a copy of his records on numerous occasions, legal analysis of this claim is unnecessary.

According to documents in plaintiff's Veterans Record, he reviewed a copy of this record on a number of occasions and received a copy of the file on at least six occasions. *See supra* note 1. The Court also received a copy of plaintiff's Veterans Record. According to Mr. Hodge's declaration, plaintiff was offered a similar copy at a November 21, 2003 meeting with defendant but "indicated" that he already had a copy. Exh. A 21. Plaintiff has presented no evidence to the contrary. The Court finds that plaintiff received a copy of his Veterans Record and, as a result, grants defendant's motion for summary judgment on count six.

#### 2. *Plaintiff's Privacy Act Claim is Barred Because He Has Not Been Injured by Any Errors in His Veterans Record (Counts Four and Seven).*

In Count Four, plaintiff alleges that defendants made "material omissions and misstatements" in his medical records. 42. The Court will treat this count as a claim

under the Privacy Act, 5 U.S.C. § 552a. The Court will also treat that part of count seven alleging negligence in the "compilation and maintenance of plaintiff's records" as a Privacy Act claim.

The Privacy Act, 5 U.S.C.A. § 552a (b), provides the method by which an individual may review his or her government records and request that they be corrected. The Privacy Act also provides a remedy for individuals aggrieved by an error in their federal government records. "[U]nder the Privacy Act, an individual is authorized to institute a civil cause of action against a federal agency for failure to amend a record, and therefore provides a limited waiver of sovereign immunity." *See* 5 U.S.C. § 552a(g)(1)(A), *Schaeuble v. Reno*, 87 F.Supp.2d 383, 387 (D.N.J.2000). The Privacy Act provides a civil remedy when any agency:

> (A) makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection;
> (B) refuses to comply with an individual request under subsection (d)(1) of this section [dealing with access to records];
> (C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or
> (D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual,

5 U.S.C. § 552a(g)(1).

 "Although the Privacy Act does not expressly require a plaintiff to exhaust administrative remedies prior to filing a civil suit, 'that requirement has been imposed by the courts as a general principle of administrative law.'" *Schaeuble*, 87 F.Supp.2d at 387 (quoting *Hammie v. Soc. Sec. Admin.*, 765 F.Supp. 1224, 1225 (E.D.Pa.1991); *Anderson v. United States Postal Serv.*, 7 F.Supp.2d 583, 586 n. 3 (E.D.Pa.1998)); *see also Quinn v. Stone*, 978 F.2d 126, 137 (3d Cir.1992). However, this exhaustion requirement is not a jurisdictional requirement but a "practical" requirement "meant to provide courts with the benefit of an agency's expertise, and serve judicial economy by having the administrative agency compile the factual record." *Id.* at 388. Therefore, although plaintiff has not exhausted administrative remedies under the Privacy Act, the Court has subject matter jurisdiction over this claim. *Id.*

 Plaintiff argues that defendant made "material omissions and misstatements" in his Veterans Record causing him "substantial personal and economic harm." However, plaintiff presented no evidence of any harm. Specifically, plaintiff claims: (1) that an "Authorization for Furnishing Medical or Dental Services dated October 1, 1946" incorrectly states that he received treatment for Bell's Palsy right, instead of Bell's Palsy left; (2) that his records state he left music school for "personal reasons," even though he was receiving treatment for panic attacks; (3) that his record incorrectly states he was treated for a left shoulder condition; and (4) that a 1948 DVA report does not mention his left facial history and incorrectly describes his treatment history. Compl. 20, 21, 22, 27.

According to defendant, plaintiff never asked the DVA to make any corrections to his records and there is no evidence that

plaintiff ever made such a request under the Privacy Act. Mot. for Summ. J. at Ex. B 6 (Lopez Dec.). Not only has plaintiff failed to exhaust his administrative remedies, he has failed to produce any evidence that he has suffered any injury as required by the civil remedy provisions of the Privacy Act. Specifically, plaintiff produced no evidence that: (A) the DVA failed to amend or review his record after his request, (B) the DVA failed to provide him with access to his records, (C) the errors in his record effected the fairness of any benefits determination made with respect to plaintiff, or (D) the alleged errors had any adverse effect on him. As a result, the Court grants defendant's Motion for Summary Judgment on count six and that part of count seven alleging negligent "compilation and maintenance" of plaintiff's records.

### D. DVA BENEFITS DETERMINATIONS

1. *The Court Does Not Have Jurisdiction to Review DVA Benefits Determinations (Counts Three, Five, and Seven).*

■ In counts three, five, and that part of seven that repeats the allegations of these counts, plaintiff challenges benefits decisions made by the DVA.

In count three, plaintiff claims he was given "a discharge for the convenience of the government rather than a service connected discharge." *Id.* ¶ 40. According to his file with the DVA and Hodge's affidavit, plaintiff was given an honorable discharge. Exh. A ¶ 3, Vets. Rec. at 1419. A "service connected discharge" does not exist and plaintiff could not have received a discharge more favorable than honorable. Exh. A ¶ 4. Therefore, the Court concludes that this claim really disputes the benefits determinations made by the DVA and it will be treated like count five. In count

five, plaintiff states defendant "denied [him] the benefits to which he was entitled because of his service connected disability." Compl. ¶ 44. This count will be analyzed as a challenge to the benefits decisions made by the DVA.

Congress established specific procedures for the adjudication of veterans benefits claims when it passed the Veterans Judicial Review Act ("VJRA") in 1988. *See Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir.1997). Under the procedures set out by the VJRA, a claimant first must file a claim for benefits with a regional office of the DVA. *Id.* Upon receiving a decision from the regional office, the claimant may appeal to the Board of Veterans' Appeals, which either issues the final decision of the Secretary or remands the claim to the regional office for further development and subsequent appeal. *See* 38 U.S.C. § 7104. The Board's decision may be appealed to the United States Court of Appeals for Veterans Claims ("CVA"). 38 U.S.C. § 7252(a). The CVA, an Article I court, has exclusive jurisdiction to review decisions of the Board. 38 U.S.C. §§ 7251, 7252(a).

■ If the claimant is challenging the validity or interpretation of a statute or regulation relied upon by the CVA, he or she may appeal the decision of the CVA to the United States Court of Appeals for the Federal Circuit. *See* 38 U.S.C. § 7292. The Federal Circuit has "exclusive appellate jurisdiction over decisions of the CVA." *Beamon*, 125 F.3d at 967 (citing 38 U.S.C. § 7292). This statutory review process vests exclusive jurisdiction to review DVA benefits decisions with the CVA, thereby depriving a federal district court of subject matter jurisdiction. *Id.* at 970.

As detailed in Section I.C. of this Memorandum, plaintiff has taken advantage of this statutory review process and has a long history of proceedings before the

DVA, the Board, and the CVA. As a result, plaintiff has been compensated at the 100 percent rate since April 28, 1998. Most recently, the DVA explained its decision not to apply this rate retroactively to 1946 in a statement of the case dated March 20, 2002. Vets. Rec. at 1479–1495. Plaintiff had until to May 20, 2002 to appeal this decision to the Board, and he failed to do so. 38 U.S.C. § 7105(d)(3).

The VJRA provides the appropriate review process for plaintiff's claims relating to DVA benefits determinations. Because the Act deprives this Court of subject matter jurisdiction over these claims, summary judgment is granted on counts three, five, and that part of count seven dealing with DVA benefits decisions.

## 2. The Court Does Not Have Jurisdiction to Review Plaintiff's Constitutional Claims (Counts Eight and Nine).

 Counts eight and nine assert that defendant violated plaintiff's Constitutional rights. Count eight alleges that defendant "discriminated against plaintiff on the basis of race." Id. 50. Count nine alleges that the injuries recited in counts one through five violated plaintiff's "rights and privileges" under the United States Constitution, "including the right to due process of law." Id. at 52. These counts will be treated as Bivens claims because this is the only avenue for receiving compensatory damages from federal officials for alleged violations of constitutional rights.[7]

Although the Third Circuit has not ruled on the issue, "federal courts have held repeatedly that they lack jurisdiction over constitutional challenges to [DVA] benefits decisions." Beamon v. Brown, 125 F.3d 965, 972 (6th Cir.1997) (citing Zuspann v. Brown, 60 F.3d 1156 (5th Cir.1995), Sugrue v. Derwinski, 26 F.3d 8 (2d Cir.1994), Hicks v. Veterans Admin., 961 F.2d 1367 (8th Cir.1992)). "[T]he courts do not acquire jurisdiction to hear challenges to benefits determinations merely because those challenges are cloaked in constitutional terms." Sugrue, 26 F.3d at 11.

In a case with similar facts, Cheves v. Department of Veterans Affairs, 227 F.Supp.2d 1237 (M.D.Fla.2002), the court dismissed a plaintiff's due process and racial discrimination claims against the DVA for lack of subject matter jurisdiction. According to the Cheves court, "Congress clearly intended to preclude district court jurisdiction over [DVA] decisions relating to benefits claims, including decisions of constitutional issues." The decisions of the [DVA] as to any question of law or fact affecting the benefits to veterans or their dependents are "final and conclusive and may not be reviewed by any other official or by any court." Id. at 1243 (citing 38 U.S.C. § 511(a)).

The Cheves court concluded that it lacked subject matter jurisdiction to hear the plaintiff's constitutional claims because they were, in essence, challenges to the DVA's decision to deny benefits. Although the plaintiff did not argue that these claims were Bivens claims, the court analyzed them as such because that was the only avenue for seeking compensatory damages from federal officials for alleged violations of constitutional rights. Id. at

---

7. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). "Bivens established that a civilian has a cause of action for damages against a federal official, in his individual capacity, who, while acting under color of federal law, violates the civilian's constitutional rights. See Bivens, 403 U.S. at 397, 91 S.Ct. 1999. Bivens-type suits are the federal counterpart of 42 U.S.C. § 1983. See Paton v. La Prade, 524 F.2d 862, 871 (3d Cir.1975)." Newmark v. Principi, 262 F.Supp.2d 509, 511 (E.D.Pa.2003)

1246. The *Cheves* court then dismissed the *Bivens* claims on the ground that the VJRA precludes *Bivens* actions against DVA officials, following a number of decisions in other circuits. *Id.* at 1247 (citing *Sugrue v. Derwinski*, 26 F.3d 8, 12 (2d Cir.1994); *Zuspann v. Brown*, 60 F.3d 1156, 1160–61 (5th Cir.1995); *Hicks v. Small*, 69 F.3d 967, 969 (9th Cir.1995)).

The Court agrees with the reasoning of *Cheves* and the several circuit courts that have denied relief for constitutional challenges to DVA benefits decisions on jurisdictional grounds. In counts eight and nine, plaintiff disputes DVA benefits decisions and cloaks his allegations in constitutional terms. *Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir.1994). The Court will treat these counts as *Bivens* claims and grant summary judgment for lack of subject matter jurisdiction.

### III. *CONCLUSION*

For the foregoing reasons, the Court grants defendant's Motion for Summary Judgment.